## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KARL SUESZ,                                          Case No. 1:13-cv-283

        Plaintiff,                                Dlott, J.
                                                     Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Karl Suesz filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On January 13, 2010, Plaintiff protectively filed an application for SSI, alleging disability as of January 12, 2007. (Tr. 104-05). After Plaintiff's claim was denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An evidentiary hearing, at which Plaintiff was represented by counsel, was held on September 13, 2011. (Tr. 33-89). An impartial a vocational expert, Robert Breslin, and Plaintiff's mother were also present and testified. On

October 11, 2011, the ALJ denied Plaintiff's application in a written decision.  (Tr. 19-28).

The record on which the ALJ's decision was based reflects that Plaintiff was 20 years old at the time of the administrative hearing and completed the eleventh grade.  On January 12, 2007, while still in high school, Plaintiff had a heart attack.  (Tr. 217, 240).  He received a pacemaker and suffers from hypertrophic cardiomyopathy, a cognitive disorder, and a dysthymic disorder.  Plaintiff alleges disability since January 12, 2007, the date of his heart attack.  Plaintiff has no past relevant work.  (Tr. 24).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "hypertrophic cardiomyopathy status post pace defibrillator implantation, cognitive disorder, and dysthymic disorder." (Tr. 21).  The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform light work with the following limitations:

> He can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of 6 hours in an 8-hour workday, and sit for a total of 6 hours in an 8-hour workday.  He can reach overhead no more than occasionally.  He must avoid all exposure to hazards and even moderate exposure to pulmonary irritants such as dusts, fumes, odors, and gases.  Mentally, he can understand, remember, and carry out simple tasks and maintain attention and concentration for 2 hours in an 8-hour workday, with normal breaks.  He can interact appropriately with supervisors, coworkers, and interact with the public no more than occasionally and he can adapt to change in a work setting.

(Tr. 23).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ

concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, including such jobs as assembler, inspector and packing line worker. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) failing to find that Plaintiff's impairments met or equaled Listing 12.02; 2) improperly evaluating Plaintiff's mental RFC; 3) improperly assessing Plaintiff's credibility; and 4) improperly evaluating portions of the record. Upon close analysis, I conclude that none of the asserted errors requires reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v.

Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion .
> . . . The substantial evidence standard presupposes that there is a 'zone
> of choice' within which the Secretary may proceed without interference
> from the courts. If the Secretary's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability

benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his past relevant work, the burden of proof shifts to the

agency to determine whether a significant number of other jobs which the claimant can

4

perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

1. *Listings Analysis*

Plaintiff's first assignment of error asserts that the ALJ erred by failing to consider whether Plaintiff met or equaled the requirements for Listings 12.02.  Notably, Listing 12.02 states:

> 12.02  *Organic Mental Disorders*:  Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.  Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4. Change in personality; or
5. Disturbance in mood; or
6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or
7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;

AND

B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.


20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02

To prove disability under a particular listing, a claimant must satisfy all of the requirements of that listing. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); see also *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) ("[F]or a claimant to show that his impairment matches a listing it must meet all of the specified medical criteria.")   "If all

6

the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner,* 34 F. App'x 202, 203 (6th Cir.2002); *see Malone v. Commissioner,* No. 12–3028, 2012 WL 5974463, at * 1 (6th Cir. Nov.29, 2012). It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment. *Elam ex rel. Goley v. Commissioner,* 348 F.3d 124, 125 (6th Cir. 2003).

Here, Plaintiff notes that the ALJ considered Listings 4.04 (concerning ischemic heart disease), 12.04 (depression), and 12.05 (mental retardation), but he failed to consider Listing 12.02 (concerning organic mental disorder). (Tr. 22). Given that the ALJ found Plaintiff's cognitive disorder to be a "severe" impairment, Plaintiff argues that the ALJ should have addressed the applicability of Listing 12.02. Plaintiff contends the ALJ's failure to address Listing 12.02 in his decision amounts to reversible error under *Risner v. Comm'r of Soc. Sec.*, No. 1:11–cv–036, 2012 WL 893882 (S.D.Ohio Mar.15, 2012) (Spiegel, J .).

In *Risner*, the Court reversed and remanded for further proceedings a case where the ALJ failed to adequately explain the basis for his decision that the plaintiff did not meet or equal a Listing. *Risner*, 2012 WL 893882, at *5. The ALJ in *Risner* made a specific finding of fact that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listing impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526)." *Risner*, No. 1:11–cv–36 (Doc. 7–2, Tr. 16). The ALJ in *Risner* gave no explanation whatsoever for this finding and simply continued to the next step of the sequential evaluation process. Despite the presence of substantial evidence in the record that could arguably support the ALJ's Listing decision, the *Risner* Court determined that the

7

ALJ in the first instance must "assess whether the evidence put forth shows that Plaintiff meets or equals a Listing." Risner, 2012 WL 893882, at *5. The Court noted:

> Requiring a reasoned and explained conclusion is not merely a formalistic requirement. On the contrary, as noted by the Sixth Circuit, it is a necessary component for this Court to ascertain whether the ALJ's decision was supported by substantial evidence.

Id. See also Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 416 (6th Cir.2011) (finding ALJ erred by failing to analyze claimant's physical condition in relation to the Listed Impairments) (cited with approval in Risner). Because the ALJ in Risner failed "to complete a required step in the five-step analysis," the Court remanded the matter to enable the ALJ "to complete his task." Risner, 2012 WL 893882, at *5.

Here, in contrast, the ALJ did not altogether skip the narrative explanation in Step Three of the sequential evaluation process as did the ALJ in Risner. While the ALJ did not expressly analyze whether Plaintiff met Listing 12.02, he did provide a thorough analysis of the severity requirements of Listing 12.04. In so doing, the ALJ determined that Plaintiff's impairment did not satisfy the criteria in paragraph B or paragraph C. (Tr. 22-23). Paragraphs B and C of Listing 12.02 are substantially identical to paragraphs B and C of Listing 12.04. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04. The ALJ explained that Plaintiff had only mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and had experienced no episodes of decompensation which had been of extended duration. (Tr. 22). The ALJ further explained that the evidence failed to establish the presence of paragraph C criteria of Listing 12.04. (Tr. 22).

Plaintiff, however, contends that the ALJ erred in finding that Plaintiff has only moderate limitations in activities of daily living and in maintaining concentration, persistence, or pace.  Plaintiff further claims that his complaints of memory problems since his heart attack and pacemaker/defibrillator placement do not support the ALJ's holding that Plaintiff has only "moderate" limitations in activities of daily living ("ADLs") and in maintaining attention, concentration, persistence, or pace.  (Tr. 529).  Plaintiff notes that both the therapist from St. Joseph's Orphanage who evaluated Plaintiff in October 2007 and the psychologist who evaluated Plaintiff in July 2008 documented Plaintiff's cognitive disorder, as demonstrated by memory problems, poor impulse control, poor decision-making, and a lack of motivation. (Tr. 533, 622, 649, 663). Although Plaintiff could perform certain ADLs, he contends that he required a number of reminders in order to do so successfully.  Plaintiff's contentions are not well-taken.

It is well established that mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment).  Thus, while Plaintiff points to symptoms related to his cognitive disorder, he fails to identify any correlating functional limitations resulting therefrom.  Substantial evidence supports the ALJ's paragraph B findings.  Moreover, the ALJ explained that his step-three findings were supported by the April 26, 2010 opinion of William Benninger, Ph.D., the state agency reviewing psychologist. (Tr. 22, 720). The ALJ also explained that "[n]o treating or examining physician has indicated that the claimant has an impairment equivalent in severity to the criteria of any impairment in the Listings of Impairments." (Tr. 22).

9

The ALJ's minimally articulated Listing analysis is sufficient for this Court to discern the basis for the ALJ's finding that plaintiff did not meet or equal Listing 12.02. *See Bledsoe v. Barnhart,* 165 F. App'x 408, 411 (6th Cir. 2006) ("The ALJ did not err by not spelling out every consideration that went into the step three determination."). Plaintiff's first assignment of error should be overruled.

      2.  *Determination of Plaintiff's Mental RFC*

Plaintiff next argues that that ALJ's mental RFC failed to account for his cognitive disorder.  Specifically, Plaintiff argues that the ALJ's RFC and subsequent hypothetical questions to the vocational expert did not provide sufficient limitations for Plaintiff's severely impaired memory or for his problems with attention and concentration.  The ALJ also failed to account for Plaintiff's reduced stamina resulting from his cardiac impairment.  As such, Plaintiff contends that the ALJ failed to comport with *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010) because he did not include a limitation regarding the pace of work.  In *Ealy v. Comm'r of Soc. Sec.*, the Sixth Circuit found that the hypothetical question posed by the ALJ should have included the restrictions regarding moderate limitations in persistence and pace which were given in a medical opinion which the ALJ claimed to rely on, and since the ALJ had not done so, the claimant's limitations were not fully conveyed to the vocational expert.  Plaintiff's contentions lack merit.

As noted above, the ALJ's RFC assessment limited Plaintiff to simple tasks and jobs that by require Plaintiff to "maintain attention and concentration for 2 hours in an 8-hour workday, with normal breaks." (Tr. 23).  As noted by the Commissioner, Plaintiff has not shown how the significant limitations imposed by the ALJ do not suffice to

address his problems with memory and attention and concentration.  Moreover, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue,* No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011)

No medical source imposed any restrictions relating to pace, speed and concentration, as is in *Ealy,* and Plaintiff offers no additional evidence or argument in support of this contention. Accordingly, Plaintiff's assertion should be overruled in this regard.

### 3. Credibility Assessment

Plaintiff's third assignment of error asserts that the ALJ's credibility assessment is not supported by substantial evidence.  Specifically, Plaintiff contends that the ALJ improperly citied to the fact that Plaintiff is alone much of day and is able to maintain his own hygiene and perform household chores.   Plaintiff further asserts that the ALJ improperly relied on the findings of the consultative examiner to find his subjective complaints relating to his congnitive impairment were less than credible.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers* v. *Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted).  Generally, the ALJ's findings as to credibility are entitled to deference because he or she has the opportunity to observe the claimant and assess his or her subjective complaints. *Cross v. Commissioner of*

11

*Social Security,* 373 F.Supp.2d 724, 732 (N.D.Ohio 2005) (citing *Buxton v. Halter,* 246 F.3d, 762, 773 (6th Cir.2001)). The regulations set forth factors that the ALJ should consider in assessing credibility. *Id.* These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain. *Id.* (citing 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii)). If the ALJ rejects the claimant's complaints as incredible, he or she must clearly state his reasons for doing so. *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). *See also* SSR 96–7p (ALJ must explain his or her credibility determinations in his or her decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.,* 375 F.3d at 392.

Here, as noted by the Commissioner, the ALJ explained that Plaintiff's allegation of numerous physical limitations was belied by his ability to perform numerous activities of daily living. (Tr. 26). For example, Plaintiff testified that he performed household chores, drove, and prepared simple meals. (Tr. 26, 48-49, 56-57, 58-59). Such a determination comports with agency regulations and therefore, was an appropriate factor to consider in assessing Plaintiff's credibility. See 20 C.F.R. § 416.929(c)(3)(i) (daily activities considered); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir.

2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain.")

Furthermore, with respect to Plaintiff's cognitive impairments, the ALJ properly found that his allegations of mental limitations were inconsistent with Global Assessment of Functioning scores throughout the record showing Plaintiff had only mild to moderate symptoms or limitations. (Tr. 25, 533, 614, 622).  In April 2010, upon consultative examination, Plaintiff was noted to be preoccupied with his difficulties, but on mental content examination, there were no indications of obsessions, compulsions, misinterpretations, paranoid ideations, delusions or hallucinations. (Tr. 26, 704). Plaintiff was alert, responsive, and oriented to time, place, person and situation, and had no confusion or lack of awareness regarding his situation. (Tr. 26, 705).

Thus, despite Plaintiff's arguments to the contrary, the ALJ properly relied on the medical evidence in assessing Plaintiff's credibility.  See 20 C.F.R. § 416.929(c)(2) (objective evidence considered).  *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested."); *Walters v. Comm'r of Soc.* Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to ascertain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") (citations omitted).

Moreover, contrary to Plaintiff's assertion, the ALJ did expressly consider Plaintiff's mother's testimony, and explained that Plaintiff's mother's statements

13

concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely credible. (Tr. 25).

In light of the foregoing, the undersigned finds that the ALJ's credibility determination properly evaluated the factors outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p and his decision is substantially supported in this regard. Plaintiff's third assignment of error should therefore be overruled.

*4. Mischaracterization of the Record.*

Plaintiff's final assignment of error contends that the ALJ improperly described portions of the record relating to Plaintiff's ability to drive, as well as the severity of his cardiac issues. To put it a different way, Plaintiff accuses the ALJ of "cherry-picking" the evidence. The argument that the ALJ mischaracterized or "cherry-picked" the record is frequently made and seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Commissioner,* 572 F.3d 272, 284 (6th Cir. 2009). The narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Commissioner,* 693 F.3d 709, 713 (6th Cir. 2012); *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir.2007). Accordingly, the undersigned finds that the ALJ's decision provides an accurate summary of the administrative record.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) The decision of the Commissioner to deny Plaintiff's SSI benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) As no further matters remain pending for the Court's review, this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KARL SUESZ,                                                    Case No. 1:13-cv-283

        Plaintiff,                                           Dlott, J.
                                                              Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16